UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DUSHON NICHALOS GREEN,<br><br>                            Petitioner,<br><br>v.<br><br>NETHANJAH BREITENBACH, et al.,<br><br>                            Respondents. | Case No. 2:14-cv-01388-APG-NJK<br><br>**Order Denying<br>Second-Amended Petition**<br><br>**[ECF No. 95]** |

Petitioner Dushon Nichalos Green has filed a counseled Second-Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. ECF No. 95. I now address the merits of the remaining ground[1] in the Second-Amended Petition, which asserts that Green's trial counsel stipulated to a harmful fact. For the reasons discussed below, I deny the Second-Amended Petition and a Certificate of Appealability.

I.   **BACKGROUND**

In affirming Green's judgment of conviction, the Supreme Court of Nevada described the relevant factual history of this case:

> On November 14, 2001, in a separate matter, Green pleaded guilty to attempted pandering, and received probation for the offense. Green's probation officer, Richard Ainsworth, took a sample of Green's DNA and entered it into the Combined DNA Index System (CODIS). After Green's DNA was entered into CODIS, it was matched to several unsolved cases leading to his arrest and prosecution.

ECF No. 23-12 at 4. A jury found Green guilty of ten counts of sexual assault, two counts of lewdness with a child under the age of 14 years, two counts of sexual assault with a minor under

---

[1] I previously dismissed grounds 1 and 3. ECF Nos. 110, 114.

the age of 14 years, and four counts of sexual assault with the use of a deadly weapon. ECF No. 21-16.  Green was sentenced to an aggregate term of life in prison with the possibility of parole after 150 years. *Id*.  Green appealed, and the Supreme Court of Nevada affirmed on July 31, 2009. ECF No. 23-12.

Green filed a state post-conviction petition on April 6, 2010. ECF No. 23-14.  The court denied Green post-conviction relief on August 22, 2012. ECF No. 24-12.  Green appealed, and the Supreme Court of Nevada affirmed on May 13, 2014. ECF No. 26-24.

Green commenced this action on August 25, 2014, by filing a *pro se* federal habeas petition. ECF No. 1.  The respondents moved to dismiss Green's *pro se* petition. ECF No. 14.  On February 14, 2017, I granted the motion in part, (1) dismissing with prejudice "any part of the federal petition [that] can be read as alleging a substantive Fourth Amendment violation," (2) dismissing grounds 19 and 20 without prejudice, and (3) finding that grounds 1-20 were unexhausted. ECF No. 56.  Green moved for a stay, and I granted the request. ECF Nos. 57, 62.

Green filed a second state post-conviction petition on August 3, 2017. ECF No. 76-2.  The state court denied Green post-conviction relief on January 18, 2018. ECF No. 76-10.  Green appealed, and the Nevada Court of Appeals affirmed on February 14, 2019. ECF No. 76-22.

Green moved to correct his illegal sentence on March 26, 2019. ECF No. 76-24.  The state court denied the motion on June 10, 2019. ECF No. 76-28.  Green appealed, and on January 30, 2020, the Nevada Court of Appeals affirmed but issued a limited remand for the state court to correct a clerical error in the judgment of conviction. ECF No. 76-33.  The state court issued an amended judgment of conviction on February 10, 2020. ECF No. 76-34.

On June 30, 2021, I reopened this matter, and Green filed a *pro se* First-Amended Petition. ECF Nos. 68, 69.  The respondents moved to dismiss the First-Amended Petition, but I

denied that motion without prejudice and appointed counsel for Green. ECF Nos. 75, 83.  Green filed his counseled Second-Amended Petition, raising the following grounds for relief: (1) his DNA was collected without any lawful basis, (2) his trial counsel stipulated to a harmful fact, and (3) the trial court failed to sever his cases. ECF No. 95.  The respondents moved to dismiss the Second-Amended Petition, and I granted the motion in part, dismissing ground 1 as not cognizable and finding ground 3 to be unexhausted. ECF No. 110.  Green elected to abandon ground 3, so I dismissed it. ECF No. 114.  The respondents filed their answer to the Second-Amended Petition, and Green filed a reply. ECF Nos. 115, 116.

## II.     GOVERNING STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) sets forth the standard of review generally applicable in habeas corpus cases.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[2]  A state court decision is contrary to clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that

---

[2] Green argues 28 U.S.C. § 2254 is unconstitutional because it violates the Suspension Clause, fundamental principles of separation of powers, the ban on cruel and unusual punishment, and the guarantee of due process. ECF No. 95 at 9–10.  I find this argument unpersuasive. *See Crater v. Galaza*, 491 F.3d 1119, 1129 (9th Cir. 2007) ("The constitutional foundation of § 2254(d)(1) is solidified by the Supreme Court's repeated application of the statute.").

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous.  The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III.   DISCUSSION

In ground 2, Green's sole remaining ground for relief, he alleges that his Sixth Amendment right to the effective assistance of counsel was violated when his counsel harmfully

4

stipulated, without first investigating, that his DNA was taken as part of an administrative function and not at the request of the Las Vegas Metropolitan Police Department (Metro). ECF No. 95 at 15–16.

### A. Background information

At Green's preliminary hearing, Richard Ainsworth, Green's probation officer for his separate offense of attempted pandering, testified that:

(1) he took a DNA sample from Green on October 13, 2002 "[b]ecause of the information furnished that [Green] was required to provide a DNA sample,"

(2) that information was based on "either . . . information in the computer or . . . [Green's] name [being] on a list of persons required to take DNA that [Ainsworth] received from [his] central office,"

(3) he made no independent determination to take Green's DNA sample but, rather, he "would have been following instructions that [he] received,"

(4) Green did not want to give the DNA sample,

(5) it was not a part of his normal process "to actually look at a list of offenses and make sure to check to see whether [the individual] needed to provide a sample," and

(6) he did not "receive any contact from [Metro] asking [him] to take a DNA sample from Mr. Green."

ECF No. 15-12 at 65–71. It is undisputed that Green's attempted pandering conviction did not allow for the lawful collection of his DNA. *See* Nev. Rev. Stat. § 176.0913.

Green's trial counsel, Michael Gowdey, filed a motion to suppress, arguing that Ainsworth's collection of Green's DNA was illegal. ECF No. 15-22. At a hearing on the motion, the trial court asked if an evidentiary hearing was necessary since Ainsworth testified at Green's

preliminary hearing. ECF No. 16-1 at 3.  Gowdey responded, "Judge, I believe it's a question of law. We seem to be in agreement that the [Parole and Probation] search was illegal, so from that standpoint putting a [Parole and Probation] officer on to determine whether he acted in good faith or anything else is really basically irrelevant under the applicable law." *Id*.  The prosecutor then clarified, "[t]here's an agreement essentially that the offense for which Mr. Green was on probation was not one that required the genetic marker testing." *Id*.  However, the prosecutor explained "an additional issue" regarded "whether or not the Department of Parole and Probation through Officer Ainsworth took the buccal swab at the bequest of or on behalf of [Metro]." *Id*.  Gowdey responded, "we don't believe that that's critical to our argument.  And yes, we do concede that he took it as more of an administrative function and not at the bequest of them." *Id*.  The trial court then found that an evidentiary hearing would not be necessary. *Id*.  Following the parties' arguments, the trial court ruled as follows on the suppression motion:

> [T]here are certain facts that I have to take into consideration.  One is that the acts of Officer Ainsworth were not intentional in the sense that they were not – he did not obtain the sample at the direction of any investigating detective.  I have also taken into consideration that any error on his part was negligent at worst.
>   . . .
> So it's a close enough situation with respect to the statute and the requirement that a DNA sample be taken that I can't see the error on behalf of the Division of Parole and Probation and its officers to be anything more than negligent.
> I don't believe that the exclusionary rule applies under these circumstances given that fact, given the fact that there isn't a deterrent effect to excluding the evidence upon either P&P or law enforcement under *Taylor* and under *Cavanaugh*.
> I know that under *Cavanaugh* some of the factors don't necessarily apply on point with this case.  The – as you pointed out, the actions of P&P were administrative under the statute rather than with an intent to provide evidence for this particular crime at the direction of any officer.  So I don't think the exclusionary rule and the Fourth Amendment analysis is applicable here.
>   . . .

> Under any analysis I think the good faith exception under *Leon* would also apply as to Detective Courtney under the circumstances under which this warrant was signed, executed. I think that *Leon* would apply. It's essential uncontested that Detective Courtney . . . acted in good faith upon the warrant here.
> . . .
> So on those grounds I'm going to deny the motion to suppress. I will say that it is dependent upon those facts that we have essentially agreed to here for purposes of the motion. Obviously if it came to light that, you know, the detectives contacted P&P in some manner and tried to obtain this sample for some other – for purposes of an investigation under circumstances that we've kind of discussed hypothetically today, that might change things.

*Id*. at 9.

Later, Green, through new trial counsel Martin Hart and Susan Burke, sought reconsideration of the denial of the motion to suppress. ECF No. 20-5. The motion for reconsideration was based in part on a Metro report dated May 26, 1998[3] regarding the pursuit of a serial rapist. ECF No. 20-17 at 11. The Metro report provided, in part, that the following investigative tactics had been used: "Files of all sex offenders currently on parole or probation reviewed over at the parole and probation. Along with briefings to them for potential suspects. This involved state, county and juvenile probate and probation." *Id*.[4] The report also stated that "any potential suspect is then contacted for interview and/or DNA." *Id*.

---

[3] Green's DNA was taken in 2002.

[4] The respondents argue that I cannot consider this report because it was not a part of the state appellate record. ECF No. 115 at 13. This report was included in Green's "supplement to exhibits to motion to reconsider suppression of DNA and latent print evidence" before the state court. *See* ECF No. 20-17. Even if this report was not transmitted to the Supreme Court of Nevada, I am not precluded from considering it. *See McDaniels v. Kirkland*, 813 F.3d 770, 780–81 (9th Cir. 2015) (explaining that "[f]ederal courts sitting in habeas may consider the entire state-court record, not merely those materials that were presented to state appellate courts" because "'*Pinholster*'s concerns are not implicated' when a federal habeas court is asked to consider evidence that was presented to the state trial court, whether or not that evidence was subsequently presented to a state appellate court").

7

The prosecution's opposition to the motion to reconsider contained an affidavit from Ainsworth's supervisor stating the following: (1) he "reviewed the electronic/computer file of Dushon Green and believed that the crime for which he was convicted was contained on the statutory list of offenses for which a biological sample must be given," (2) he "directed Officer Ainsworth to collect such a sample," and (3) he "was never asked or directed to obtain a biological sample from Dushon Green on behalf of any officer of [Metro] or any other agency." ECF No. 20-11 at 11.

The trial court denied the motion for reconsideration:

> As to an evidentiary hearing, I'm not going to grant one for a couple of reasons. One, it was previously waived, and I understand it was by predecessor counsel back at the hearing we had in May or June of 2005, and there were certain evidentiary concessions and stipulations made at that time.
> The position of Mr. Green through prior counsel was that the taking of the DNA sample wasn't intentional, it wasn't on behalf of or at the behest of any Metro detectives, and it was agreed at that point there was no knowledge by the police department of the defendant being a person of interest or even a suspect prior to the DNA hit in 2004 from the sample that was taken in the fall of 2002.
> . . .
> I indicated in May of 2005 that if the circumstances from an evidentiary standpoint changed, that would have some bearing. I don't think there is a sufficient showing here to justify having an evidentiary hearing or change the circumstances in 2005.
> On the issue of whether or not the exclusionary rule would apply, I would still rely on not only the *Taylor* and *Cavanaugh* cases that I relied on back in 2005. There was no evidence presented then of anything beyond a negligent or inadvertent act by the Parole and Probation officer to take the sample.

ECF No. 20-18 at 11–12.

During Green's later state post-conviction evidentiary hearing, Gowdey testified as follows:

(1) "it was [his] impression that the DNA was wrongfully taken from" Green because "there was nothing that mandated that Mr. Green give a DNA sample in order to get off of probation,"

(2) "Parole & Probation had insisted that this was an innocent mistake,"

(3) he "didn't have any information to suggest that there was something nefarious" that had occurred regarding the taking of the sample and "nothing that [he] had been given had indicated that P&P had done it at the direction of Metro to target Mr. Green,"

(4) he did not stipulate that "there was no malfeasance" but instead only stipulated that he "didn't have evidence of any malfeasance or any nefarious purpose on . . . the part of Metro or Parole & Probation,"

(5) because he did not believe that Ainsworth's innocent collection of the DNA "pass[ed] the smell test," he called Ainsworth at the preliminary hearing "to flush out the facts with regard to the obtaining of the DNA sample," but he "never did get the smoking gun that [he] thought that [he] needed," and

(6) he had his investigator interview witnesses to investigate Green's claim that he was being targeted by Metro.

ECF No. 25-7 at 41–50.

Martin Hart and Susan Burke, who represented Green at his trial after Gowdey withdrew, also testified at Green's state post-conviction evidentiary hearing. Hart testified that he and Burke "received a memo from Metro to Parole & Probation . . . saying: We would like you to check on all your sex offenders . . . because we're looking for . . . someone [who] was involved in all these rapes." *Id*. at 9, 17. And Burke testified that (1) they "had a real, real battle about discovery in terms of getting some of those internal Metro documents," and (2) "[d]uring

the course of [her] handing this case . . . [she] [n]ever [found] any evidence to show that Metro had targeted Dushon Green and had asked the Department of Parole & Probation to obtain a DNA sample from Mr. Green because Metro could not get the sample themselves through a warrant." *Id*. at 31, 34.

### B.  Legal standard

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984).  A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693.  Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05.  In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id*. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation

marks omitted) ("When a federal court reviews a state court's Strickland determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### C. State court determination

In affirming the denial of Green's state post-conviction petition, the Supreme Court of Nevada held:

> First, appellant argues that his trial counsel, Mr. Michael Gowdey, was ineffective for allegedly stipulating in the proceedings on a motion to suppress evidence that there was no proof that a DNA sample taken by the Department of Parole and Probation (the Department) was at the behest of the Las Vegas Metropolitan Polie Department (Metro). Appellant asserts that this affected his ability to litigate the issue later in a motion to reconsider and on appeal and that this concession should not have been made without further investigation.
> Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Trial counsel did not stipulate to the fact that the Department was not acting on behalf of Metro, but rather trial counsel conceded that he had no evidence that the Department was acting on behalf of Metro when the DNA sample was taken. This concession, which was not objectively unreasonable as counsel did not have evidence of collusion between the Department and Metro and did investigate this point in discovery, did not affect appellant's ability to litigate the issue if evidence could be found at a later time. In fact, attorneys who succeeded Mr. Gowdey in representing appellant did litigate a motion to reconsider the denial of the motion to suppress with a Metro report that they discovered with further investigation. This report, which was not provided to this court for review but is described as having been written in 1998, did not establish evidence of collusion in the taking of the DNA sample in 2002. At the evidentiary hearing, appellant's former trial counsel testified that they investigated but could not find any evidence that the Department was working at the behest of Metro in obtaining the

> DNA sample from appellant. Appellant also litigated the denial of his motion to suppress and the motion for reconsideration on direct appeal, and this court concluded that although the DNA sample taken by the Department was illegally obtained, the exclusionary rule did not apply because the DNA sample was taken in an improper search relating to another crime, there was no evidence that the probation officer knew the sample would become useful in identifying appellant for the crimes in the instant case and it was reasonable to believe that the violation of appellant's rights was due to an unintentional mistake. *Green v. State*, Docket No. 60756 (Order of Affirmance, July 31, 2009). Appellant continues to fail to present satisfactory evidence demonstrating the underlying premise of his claim—that the Department acted at the behest of Metro in obtaining his DNA sample.
>> [FN1] An affidavit prepared by Detective Love, the first lead investigator, indicated that appellant was not a target in their investigation. Detective Courtney, the subsequent lead investigator, testified that appellant was not a suspect until 2004 when the positive result from the DNA sample was returned. Appellant's testimony to the contrary that he was a target was unpersuasive to the district court, and substantial evidence supports this conclusion.
>
> Appellant further fails to demonstrate a reasonable probability of a different outcome had counsel conducted further investigation or had counsel not conceded to the lack of evidence at the hearing on the original motion to suppress evidence. Therefore, we conclude that the district court did not err in denying this claim.
>> [FN2] To the extent that appellant argues that his appellate counsel, Mr. Martin Hart, was ineffective for failing to provide authority for an argument that an evidentiary hearing should have been conducted on the motion to suppress and motion to reconsider, appellant fails to demonstrate his appellate counsel was ineffective. *See Kirksey v. State*, 112 Nev. 980, 998, P.2d 1102, 1114 (1996).

ECF No. 26-24 at 2–4.

### D. De novo review

Green argues that the following finding was based on an unreasonable determination of the facts: "Trial counsel did not stipulate to the fact that the Department was not acting on behalf

of Metro." ECF No. 116 at 8. At the argument on his suppression motion, Gowdey stated, "we do concede that he took it as more of an administrative function and not at the bequest of them." ECF No. 16-1 at 3. Although Gowdey later testified at the post-conviction evidentiary hearing that he only conceded that he "didn't have evidence of any malfeasance or any nefarious purpose on . . . the part of Metro or Parole & Probation," it is apparent from Gowdey's statement at the original suppression motion that his concession went a step further, conceding that Parole and Probation did not take the DNA sample at the bequest of Metro. Therefore, the Supreme Court of Nevada's decision was based on an unreasonable determination of the facts, so I will review this claim de novo. *See Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of [the state court's] error, our review of petitioner's underlying . . . claim is unencumbered by the deference AEDPA normally requires."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that . . . the state court's decision was based on an unreasonable determination of the facts, we evaluate the claim de novo.").

### E. Analysis

Gowdey's concession at the original suppression hearing that Parole and Probation did not take the DNA sample at the bequest of Metro likely fell below an objective standard of reasonableness. Although Gowdey had no proof at the time of the original suppression hearing that any nefarious conduct had occurred, making this full concession appears to have been a misstep, especially since it was apparently based on his examination of Ainsworth at the preliminary hearing and not on any further investigation into the issue. *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after less than complete investigation are reasonable

precisely to the extent that reasonable professional judgments support the limitations on investigation.").

That being said, Green fails to demonstrate that Gowdey's performance prejudiced him such that there is a reasonable probability that, but for Gowdey's error, the result of the proceeding would have been different. First, Hart and Burke were not precluded from relitigating the motion to suppress based on Gowdey's concessions after they obtained Metro's 1998 report. At the end of the hearing on the original motion to suppress, notwithstanding Gowdey's concession, the trial court left the door open for the defense to present any future evidence of collusion between Metro and Parole and Probation. Hart and Burke were able to file a motion for reconsideration and have a hearing on their motion. While the trial court did not grant Hart and Burke an evidentiary hearing or their motion for reconsideration, that court stated these denials were "for a couple of reasons." In addition to Gowdey having made concessions during the litigation of the original motion to suppress, the trial court also found that there was not a sufficient change in circumstances.

Second, Green fails to demonstrate that the trial court would have granted his motion for reconsideration absent Gowdey's alleged obstruction on the relitigating of the motion to suppress. Green argues that the only reasonable explanation for why his name mysteriously appeared on a list or on a computer requiring his DNA to be taken by Parole and Probation is that someone at Parole and Probation added his name in response to Metro's report or request. ECF No. 116 at 15. While this may be an explanation, I disagree that it is the only reasonable explanation. Rather, as the trial court reasonably found during the original hearing on the motion to suppress, it could also have been mere negligence on the part of Parole and Probation. Indeed, it is nonsensical that if Parole and Probation took Green's DNA in 2002—four years after the

14

Metro report—at the request of Metro, that a comparative analysis of Green's DNA to the serial rapist's DNA was not made until two years later in August 2004. And even if Parole and Probation had general information concerning the ongoing Metro investigation of the serial rapist prior to taking Green's DNA sample, there has been no evidence presented that Parole and Probation specifically targeted Green. Instead, as Ainsworth's supervisor stated in his affidavit, it was mistakenly believed that Green was required to give a DNA sample. Accordingly, Green fails to meet his burden of demonstrating more than mere conjecture that the trial court would have granted relief on his motion for reconsideration absent Gowdey's error. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation.").

Because Green fails to demonstrate prejudice under *Strickland*, he is denied federal habeas relief for ground 2.[5]

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Green. Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). I have evaluated the claims within the Second-Amended Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must

---

[5] Green requests that this court "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations in this amended petition and any defense that may be raised by Respondents." ECF No. 95 at 21. Green fails to explain what evidence would be presented at an evidentiary hearing. Furthermore, Green already had a thorough evidentiary hearing at the state district court on the remaining ground. And further factual development would not affect my reasons for denying relief. Green's request for an evidentiary hearing is denied.

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  Applying these standards, I find that a certificate of appealability is unwarranted.

## V.   CONCLUSION

I THEREFORE ORDER that the Second-Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2254 **[ECF No. 95] is denied**.

I FURTHER ORDER that a certificate of appealability is denied.

I FURTHER ORDER the Clerk of Court to enter judgment accordingly and close this case.

Dated: September 11, 2024.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE